IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 1 OF PA/DE,** et al., : : : : | CIVIL ACTION | |
| Plaintiffs, : | | |
| : | | |
| v. : | No. 13-3883 | |
| : | | |
| **ARB CONSTRUCTION, INC. et al.,** : | | |
| Defendants/ : | | |
| Third-Party Plaintiffs, : | | |
| : | | |
| v. : | | |
| : | | |
| **ERNEST BOCK & SONS, INC.,** : | | |
| Third-Party Defendant. : | | |

**Goldberg, J.**                                              **March 23, 2016**

### Memorandum Opinion

Third-Party Plaintiff A.R.B Construction, Inc. ("ARB") has brought suit against Ernest Bock & Sons, Inc. ("EBS") alleging that EBS breached the terms of the contract by which ARB served as EBS' subcontractor on a construction project. EBS, in turn, filed a counterclaim asserting that ARB breached the same contract. Before me is EBS' motion for summary judgment on both breach of contract claims. For the reasons that follow, EBS' motion for summary judgment will be granted as to liability on both claims but denied as to damages.

1

I. **FACTUAL RECORD**

The following facts are undisputed unless otherwise indicated:

A. *The Project and Related Contracts*

The School District of Philadelphia hired EBS as the general contractor for a construction project at the General Philip Kearney School ("the Project"). On April 30, 2012, EBS entered into a subcontract with ARB by which ARB was to supply all of the labor and materials to complete the masonry portion of the Project at a cost of $777,500.00. (Decl. of Anthony DePascale, Ex. A, Subcontract p. 1.)[1]

The subcontract provides, in relevant part, the following:

> EBS reserves the right to terminate Subcontractors/Suppliers Purchase Order and/or subsidize completion of your work following 48 hours written notice if in EBS' opinion the Subcontractor or its Supplier is unnecessarily delaying the progress of the project, faulty workmanship, or failure to provide proper and acceptable supervision, material, labor etc., failure to pay its Subcontractor, suppliers or for the convenience of the Contractor, Subcontractor shall only be entitled to its actual costs for work performed to date of termination so long as Subcontractor is not in default or terminated for cause.
>
> . . .
>
> Payment Terms: NO payments shall be made to Subcontractor/Supplier without the receipt of a signed Purchase Order, insurance certificate and exhibits as well as a list of subcontractors and suppliers, certified payrolls, approval of schedules, release of liens, which must be reviewed and accepted by EBS. A monthly release of liens and claims from both the subcontractor/supplier and their subcontractors, suppliers and any labor/union organizations must be submitted.
>
> . . .

---

[1] EBS submitted exhibits as attachments to the Declaration of Anthony DePascale. Hereafter, I will refer to those exhibits as "EBS' Ex. _____."

2

> EBS will require from Subcontractor/Supplier a release of liens from their subcontractors/suppliers and any labor/union organizations before payment or final payment is made.

(Id. at ¶¶4, 5, 15.)

Along with each payment application, ARB submitted to EBS a release of liens and certified payrolls, all of which were signed by ARB's owner Joanna Harris on behalf of ARB. (DePascale Decl. ¶5; EBS' Ex. B.) The releases are dated September 24, 2012, October 31, 2012, November 9, 2012, November 21, 2012, December 7, 2012, and February 15, 2013. (Id.) These identical releases state that Ms. Harris, on behalf of ARB and in consideration of the specified payment, released all claims against EBS:

> resulting or arising from labor including any wages and fringe benefits (whether statutorily mandated or otherwise) and/or materials, subcontract work, equipment or other work, rentals, services or supplies heretofore furnished by or on behalf of the undersigned in and for the construction, design, improvement, alteration, additions to or repair of the above described Project including but not limited to any claims arising from delay, interference, inefficiency, acceleration or other impacts incurred by the undersigned on the Project from the beginning of time thru the period ending [date].

(Id. at ¶1.) The releases further state:

> this instrument shall constitute a complete release of all debts, rights, claims, damages and demands of the undersigned. . . . To the extent that there are claims that the undersigned wishes to reserve and except out of this release, they are detailed with specificity on the reverse side of the release.

(Id. at ¶6.) Ms. Harris never listed any claims on the reserve side of the releases or anywhere else for that matter. (DePascale Decl. ¶7.)

In executing each payment application, Ms. Harris certified on behalf of ARB that "all taxes, welfare and pension fund payments, and fringe benefits of all nature due in connection therewith have been fully paid, except as noted on the reverse side of this sheet." Ms. Harris did

3

not note any exceptions on any of the payment applications she submitted to EBS on behalf of ARB. (EBS' Ex. E; Ex. C, Harris Dep. 376:7-17.)

ARB employed members of the Bricklayers & Allied Craft Workers, Local 1 ("Bricklayers") in order to fulfill its obligations under the subcontract. ARB executed a collective bargaining agreement with Bricklayers which established several jointly administered benefit funds. Under the agreement, ARB was required to make specified deposits to the funds for each hour worked by covered employees. Despite certifying that ARB had fully complied with its union fund obligations on the payment applications submitted to EBS, during her deposition, Ms. Harris admitted that ARB was delinquent on its payments. (EBS' Ex. J, Harris Dep. 107:23-108:20 ("A.R.B. absolutely owes delinquent hours and benefits payments."))

EBS also offered evidence that ARB failed to provide sufficient numbers of masons to complete its work in accordance with the Project schedule referenced by the subcontract. (DePascale Decl. ¶11; EBS' Exs. F, G.) In their response to EBS' statement of undisputed facts, ARB attempted to demonstrate that this fact is in dispute by asserting that "EBS exploited ARB throughout the Kearny Project" and EBS paid ARB an amount less than what was claimed on two payment applications. (See ARB's Resp. to EBS Statement of Undisputed Facts ¶21.) Even assuming that ARB offered evidence to support these contentions, such evidence would not be responsive. In order to create a genuine issue of material fact, ARB would have to cite evidence that ARB did in fact adequately staff the Project. Instead, ARB offered two non-responsive complaints. As such, I will treat EBS' assertion of fact that ARB failed to provide adequate manpower under the subcontract as undisputed. See Fed. R. Civ. P. 56(e)(1) ("If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.")

Furthermore, throughout the Project, EBS received multiple complaints from School District representatives about the progress of ARB's work and the delay it was causing to the Project. (EBS' Ex. F.) ARB admits that the School District made these complaints but urges that the delay was attributable to EBS' failure to prepare the Project for the masonry phase of work. ARB states it had to expend its own resources to correct errors made by other subcontractors on the Project. (ARB's Ex. 5, Decl. of Jimmy Harris ¶¶7-17.)

On November 12, 2012, EBS notified ARB that it had forty-eight hours to increase its manpower or EBS would declare ARB to be in breach of contract. (EBS' Ex. G.) ARB then hired R&M Masonry Contractors, Inc. ("R&M") to provide additional manpower on the Project. (ARB's Ex. 7.) ARB admits that it owes R&M approximately $83,000 for the work it performed pursuant to this contract. (EBS' Ex. D, Harris Dep. 504:6-12).[2]

On March 4, 2013, Bricklayers ceased supplying masons to the Project because ARB had not made required contributions to the Bricklayers' benefits funds. (EBS' Exs. H, I.)[3] Although ARB appears to have paid some amount to the funds, that amount did not satisfy ARB's required contributions. During her deposition, Ms. Harris admitted that ARB owed Bricklayers outstanding contributions. (Id., EBS' Ex. J, Harris Dep. 106:4-108:2.)

On March 8, 2013, EBS declared ARB in breach of contract and terminated the contract. (EBS' Ex. L.) ARB argues this termination was wrongful because any delay or inability to

---

[2] ARB urges that this fact is disputed but failed to cite to any evidence which establishes that ARB fully paid R&M for the work it performed.

[3] ARB responds that this fact is disputed but, again, its citations to the record do not support that assertion. To demonstrate that this fact is disputed, ARB cites to Ms. Harris' deposition wherein she stated that ARB made some payments to the Bricklayers' benefits fund. (ARB's Resp. to EBS' Statement of Facts ¶25.) However, Ms. Harris also admitted that ARB was delinquent in its payments. (See EBS' Ex. J, Harris Dep. 107:23-108:20 ("A.R.B. absolutely owes delinquent hours and benefits payments."))

perform on ARB's part was attributable to EBS' failure to properly manage the Project. (ARB's Ex. 5, Harris Decl. ¶¶7-34.)

ARB never supplied EBS with a release of liens from Bricklayers and Ms. Harris admitted she never obtained such a release from Bricklayers. (EBS' Ex. C, Harris Dep. 341:6-20, 345:7-11, 347:1-6; Ex. D, Harris Dep. 435:7-16.)[4] ARB never supplied EBS with a final release of liens signed on behalf of ARB, which Ms. Harris admits is a condition precedent to EBS' obligation to pay ARB. (EBS' Ex. C, Harris Dep. 342:22-343:12; ARB's Resp. to EBS' Statement of Facts ¶27.)[5]

### B. *Damages*

EBS hired other contractors, including R&M, to complete ARB's scope of work under the subcontract. EBS contends that it incurred $947,719.44 in actual costs to complete the work. As such, EBS claims that it is entitled to the $170,219.44 it paid above the contract price to complete the work as well as statutory interest on that amount. (DePascale Decl. at ¶18; EBS' Ex. N.)

ARB counters that EBS did not fully pay R&M for the work it did. In support, ARB cites a verified state court complaint that R&M filed against EBS and ARB. (ARB's Ex. 7.) ARB also provided an affidavit from Jimmy Harris, ARB's Operations Manager and "Estimator," in which

---

[4] Yet again ARB's response to this assertion is non-responsive. ARB cites to two cancelled checks reflecting payments EBS made to ARB. (See ARB's Resp. to EBS Statement of Undisputed Facts ¶26.) It is unclear why ARB asserted that these checks create a dispute as to whether ARB provided EBS with a release from Bricklayers.

[5] Despite admitting this fact in its response to EBS' statement of undisputed facts, ARB argues, in their brief, that supplying EBS with a release of liens was not a condition precedent to EBS' payment obligation under the subcontract. I address this issue below.

he states that EBS did not fully pay R&M work for ARB did in the initial months of the Project. (ARB's Ex. 5, Harris Decl. ¶¶28-34.)

## II.     PROCEDURAL HISTORY

On July 3, 2013, Bricklayers and their related benefit funds filed suit against ARB and its president, Ms. Harris. The Complaint consisted of 1) a claim against ARB for violating the collective bargaining agreement and trust agreements; 2) a claim against Ms. Harris to collect delinquent contributions; and 3) a claim against Ms. Harris for wrongfully converting the delinquent contributions to her own use or ARB's use.

On August 7, 2013, ARB and Ms. Harris filed a third party complaint against EBS alleging that EBS breached the subcontract by failing to pay moneys it owed to ARB and that EBS' breach was the product of racial discrimination in violation of 42 U.S.C. §1981.

On September 5, 2013, EBS in turn brought a counterclaim against ARB and Ms. Harris alleging that ARB breached the subcontract by failing to supply adequate manpower and materials, falsely certifying that it made complete payment for all materials and labor it used on the Project, failing to timely complete its work on the Project and submitting non-compliant payment applications.

On April 15, 2015, I entered an Order granting Ms. Harris' request to voluntarily dismiss the breach of contract and Section 1981 claims she brought against EBS with prejudice. On July 20, 2015, I entered an Order granting ARB's request to voluntarily dismiss the Section 1981 claim it brought against EBS with prejudice. On July 28, 2015, Bricklayers, ARB and Ms. Harris entered a consent judgment which resolved Bricklayers' claims regarding the delinquent benefit fund contributions from ARB.

Presently before me is EBS' motion for summary judgment, wherein EBS requests that ARB's breach of contract claim be dismissed and judgment entered in its favor on the breach of contract claim it brought against ARB. For the reasons detailed below, I will grant EBS' motion with respect to liability but deny EBS' motion with respect to damages.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

## IV. DISCUSSION

### A. *EBS' Motion for Summary Judgment on ARB's Breach of Contract Claim*

EBS has moved for summary judgment on ARB's breach of contract claim wherein it is alleged that EBS failed to pay ARB money it was owed under the subcontract and that EBS' poor management of the Project prevented ARB from timely completing its work. In support of its motion, EBS argues that it is entitled to judgment in its favor because ARB released all of its claims against EBS and, alternatively, ARB failed to provide releases from its subcontractors and doing so was a condition precedent to EBS' obligation to pay ARB for services rendered.[6]

#### i. *Release of Claims*

EBS first argues that it is entitled to summary judgment on ARB's breach of contract claim because ARB unequivocally released all claims it could have asserted against EBS by signing releases on September 24, 2012, October 31, 2012, November 9, 2012, November 21, 2012, December 7, 2012, and February 15, 2013. (See EBS' Ex. B.)

---

[6] EBS also argues that it is entitled to summary judgment on ARB's breach of contract claim because (1) the undisputed evidence shows that EBS terminated ARB's subcontract when ARB failed to provide an adequate number of masons to complete its portion of the Project on schedule and (2) ARB failed to specify its damages. Having found that ARB's breach of contract claim is barred by the releases it executed, I need not reach these additional arguments raised by EBS.

Under Pennsylvania law, "a release is itself a contract." First Gen. Const. Corp., Inc. v. Kasco Const. Co., Inc., 2011 WL 2038542, at *4 (E.D. Pa. May 24, 2011). "In Pennsylvania, it is well settled that the effect of a release is to be determined by the ordinary meaning of its language." Taylor v. Solberg, 778 A.2d 664, 667 (Pa. 2001). "However improvident the release may be or subsequently prove to be for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case." Id.

Construction lien waivers and releases are routinely enforced. See, e.g., First Gen. Const. Corp., Inc. v. Kasco Const. Co., Inc., 2011 WL 2038542, at *5 (E.D. Pa. May 24, 2011) (claims barred by release by which subcontractor waived and released "any and all claims and liens"); Sauer Inc. v. Honeywell Bldg. Solutions SES Corp., 742 F. Supp. 2d 709, 720 (W.D. Pa. 2010) (subcontractors' claims barred where asserted claims accrued prior to signing of release containing clear and unambiguous language of release and waiver).

I agree with EBS that the language of the releases, which Ms. Harris admits she signed, released any claims ARB had against EBS relating to events occurring prior to signing. Furthermore, ARB did not preserve any claims by noting them on the reverse side of the releases. The language of the release is clear and unambiguous and, by its terms, ARB released the claim it is now attempting to pursue against EBS.

Despite this clear language, ARB raises a host of arguments as to why the releases can or should not be enforced. First, ARB asserts that EBS "thwarted [them] from enjoying the fruits of both the construction contract and the releases relevant thereto. Thus, the releases are unenforceable contracts." (ARB's Resp. p. 4.) Specifically, ARB contends that (1) EBS failed to provide a work schedule to ARB, (2) EBS failed to properly supervise the other subcontractors

who were preparing the Project for the masonry work, and (3) EBS did not provide a "proper layout of the area." (Id.)

ARB's argument regarding EBS' alleged conduct which it contends "thwarted" its enjoyment of the contract is foreclosed by the language of the releases. ARB's complaints concern "delay, interference, inefficiency, acceleration or other impacts" and ARB explicitly waived its right to assert such claims upon execution of the releases. As such, ARB cannot invoke these complaints as a basis for nullifying the releases.

ARB also argues that the releases are unenforceable because EBS failed to pay the full amount that ARB billed EBS during the initial months of the Project. ARB urges that this failure breached the terms of the contract and the covenants of fair dealing implied therein.

Again, this argument ignores the import of the releases. EBS correctly notes that "ARB had clear options if it did not agree with EBS' accounting on any particular payment application." (EBS' Br. p. 4.) ARB could have accepted the payment and noted its objection on the reverse side of the release or ARB could have refused to accept EBS' payment and refused to execute the accompanying release. ARB took neither course of action and instead accepted EBS' payments and executed the releases without reserving any claims. As such, ARB released EBS from any claim regarding these payments.

Lastly, although Ms. Harris admits that she signed the releases, ARB maintains that the releases are unenforceable because the notarization procedure did not adhere to Pennsylvania notary law. However, there is no requirement that a contract be notarized to be enforceable. As such, any alleged defect in the notarization procedure will not render the releases unenforceable.

### ii. *Condition Precedent to EBS' Obligation to Make Payments to ARB*

EBS argues that, even assuming ARB is owed any money under the subcontract, ARB's claim should nonetheless be dismissed because ARB conceded that it has not satisfied the conditions precedent to EBS' obligation to pay ARB under the subcontract. I agree.

A condition precedent is a "condition which must occur before a duty to perform under a contract arises." See Acme Markets, Inc. v. Fed. Armored Exp., Inc., 648 A.2d 1218, 1220 (Pa. Super. 1994). "While the parties to a contract need not utilize any particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention." Id.

Here, the subcontract explicitly states "EBS will require from Subcontractor/Supplier a release of liens from their subcontractors/suppliers and any labor/union organizations before payment or final payment is made." (EBS' Ex. A p. 2, ¶5.) The plain language of this provision is that EBS' payment obligation does not arise until ARB provides a release of liens from its subcontractors and suppliers.

Ms. Harris admitted that ARB never obtained a release of liens from its subcontractors. Ms. Harris testified as follows:

> Q. And it says you have to give a release of liens before you get paid, right? Looking at [paragraph] number five [of the subcontract].
>
> A. A release of liens, yes.
>
> Q. It says a monthly release of liens and claims from both the subcontractor supplier and their subcontractor suppliers and labor union organizations must be submitted - -
>
> A. Yes.

Q. - - before you get paid, right?

A. Yes.

Q. Do you have a release of liens from the union in this case?

A. They didn't sign it.

Q. No?

A. No.

. . .

Q. So under the contract, [EBS] is entitled to a release of liens from your labor unions before you get paid anything, correct?

A. Yes.

. . .

Q. So under this, you're never entitled to money, correct?

A. Until they sign the release?

Q. Yes.

A. Until they sign the release. That's true. That's what it says here.

. . .

Q. Do you have a signed release from the bricklayer's that you can provide to [EBS] today?

A. Oh, no, no. Not on me. I don't have any documents to provide to you today.

Q. Well, when you say not on you, do you actually possess a release from the bricklayer's, releasing their claims for unpaid benefits against A.R.B.?

A. No, I don't.

(EBS' Ex. C, Harris Dep. 341:6-20, 345:7-11, 347:1-6; Ex. D, Harris Dep. 435:7-16.)

Despite this clear admission by Ms. Harris, ARB responds that EBS' contention that ARB failed to supply a release from Bricklayers is a "blatant misstatement." (See ARB's Resp.

13

p. 5.) In support, ARB cites a portion of Ms. Harris' deposition testimony wherein she states that she executed a release on behalf of ARB. (ARB's Ex. 3, Harris Dep. 402:1-13) ("So, yes, I did sign that and I signed it under duress to have payment made to the people who had worked on the job.")) This testimony is non-responsive to EBS' argument that the undisputed evidence demonstrates that ARB never provided EBS with releases from ARB's subcontractors.

As such, the undisputed evidence demonstrates that ARB failed to obtain and submit to EBS releases from its subcontractors. By the terms of the subcontract, EBS' duty to pay ARB was contingent on ARB's provision of these releases. As noted above, Ms. Harris even admitted that the subcontract contained this condition precedent.[7] Therefore, the undisputed evidence demonstrates that the condition precedent to EBS' payment obligation was not satisfied and EBS is entitled to summary judgment on ARB's breach of contract claim.

### B. *EBS' Motion for Summary Judgment on its Breach of Contract Claim*

EBS has also moved for summary judgment on the breach of contract claim it brought against ARB alleging that ARB breached the terms of the subcontract by 1) failing to provide sufficient manpower, supervision and equipment; 2) falsely certifying that it made complete payment for all labor used; 3) failing to complete its work under the schedule set by the contract; and 4) submitting payment applications that did not comply with the terms of the contract.

The undisputed evidence demonstrates that ARB failed to provide adequate manpower to complete the Project. (See DePascale Decl. ¶11; EBS' Exs. F, G.) As noted above, ARB failed to

---

[7] Despite the clear language of the contract and Ms. Harris' admission, ARB argues that the "only 'condition precedent' that had to be met was to complete work as required under the contract; once the work was completed, Plaintiff ARB was entitled to be paid for its work." (ARB's Resp. p. 6.) ARB's argument entirely ignores the actual language of contract as well as the testimony of Ms. Harris wherein she acknowledged that the subcontract included such a condition precedent.

point to any evidence to refute EBS' evidence that ARB failed to adequately staff the Project. Furthermore, Ms. Harris admitted that ARB did not make full payment to R&M despite certifying that it had done so and also that ARB submitted payment applications to EBS without providing the requisite releases from its own subcontractors, including Bricklayers. The foregoing conduct violated the terms of the contract. As such, EBS is entitled to judgment on its breach of contract claim against ARB.

### C. *Damages*

EBS urges that it is entitled to the $170,219.44 it paid above the contract price to complete the work plus statutory damages. EBS explains that it incurred this amount above the contract price by paying replacement subcontractors, including R&M, to complete the masonry work contemplated by ARB's subcontract. (See DePascale Decl. ¶18, EBS' Ex. N.)

ARB responds that there is a genuine issue of material fact as to EBS' damages calculation because it has presented evidence that EBS did not pay ARB for work it did in September and October of 2012 and that EBS also failed to pay R&M for work it did after ARB's contract was terminated. (ARB's Ex. 7; Ex. 5, Harris Decl. ¶¶28-34.))

There is an issue of fact as to the amount EBS paid the subcontractors it hired to complete the masonry phase of the Project. Based on the record before me, I cannot ascertain the amount of damages that EBS has sustained as a result of ARB's breach of contract. As such, a hearing is necessary to establish the measure of damages.

## V. CONCLUSION

For the reasons set forth above, EBS' motion for summary judgment will be granted as to liability but denied as to damages.[8] An appropriate Order follows.

---

[8] EBS notes that it no longer is pursuing an entry of judgment against Ms. Harris personally. (EBS' Br. p. 15.)