IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 1 OF PA/DE,** et al., : : : : | CIVIL ACTION |
| Plaintiffs, : : | |
| v. : : | No. 13-3883 |
| **ARB CONSTRUCTION, INC. et al.,** : Defendants/ : Third-Party Plaintiffs, : : | |
| v. : : | |
| **ERNEST BOCK & SONS, INC.,** : Third-Party Defendant. : | |

**Goldberg, J.**                                           September 15, 2016

**<u>Memorandum Opinion</u>**

    Third-Party Plaintiffs A.R.B Construction, Inc. ("ARB") and ARB's owner Joanna Harris brought suit against Ernest Bock & Sons, Inc. ("EBS") alleging causes of action for breach of contract and a violation of 42 U.S.C. § 1981. Before the deadline for filing summary judgment motions, ARB and Ms. Harris voluntarily dismissed their section 1981 claims.

    Presently before me is EBS' motion to recover the attorney's fees and costs it incurred in defending against ARB's section 1981 claim. For the reasons that follow, I will grant EBS' motion.

1

I.  **FACTUAL BACKGROUND**[1]

The School District of Philadelphia hired EBS as the general contractor for a construction project at the General Philip Kearney School ("the Project"). On April 30, 2012, EBS entered into a subcontract with ARB by which ARB was to supply all of the labor and materials to complete the masonry portion of the Project at a cost of $777,500.00.

The subcontract provided that no payments were to be made to ARB prior to ARB providing EBS with, among other things, a release of liens and claims from ARB and its subcontractors. Along with each periodic payment application, ARB submitted to EBS a release of liens and certified payrolls, all of which were signed by ARB's owner Joanna Harris on behalf of ARB. These identical releases stated that Ms. Harris, on behalf of ARB and in consideration of the specified payment, released all claims against EBS.

ARB employed members of the Bricklayers & Allied Craft Workers, Local 1 ("Bricklayers") in order to fulfill its obligations under the subcontract. ARB executed a collective bargaining agreement with Bricklayers which established several jointly administered benefit funds. Under the agreement, ARB was required to make specified deposits to the funds for each hour worked by covered employees. Despite certifying that ARB had fully complied with its union fund obligations on the payment applications submitted to EBS, Ms. Harris admitted in her deposition that ARB was delinquent on its payments.

ARB also failed to provide sufficient numbers of masons to complete its work in accordance with the Project schedule referenced by the subcontract. Throughout the Project, EBS

---

[1] The following statement of facts is taken from the opinion granting EBS' motion for summary judgment as to liability. See Bricklayers & Allied Craftworkers v. ARB Constr., Inc., 2016 WL 1161528, at *1-4 (E.D. Pa. Mar. 23, 2016).

received multiple complaints from School District representatives about the progress of ARB's work and the delay it was causing to the Project.

On November 12, 2012, EBS notified ARB that it had forty-eight hours to increase its manpower or EBS would declare ARB to be in breach of contract. ARB then hired R&M Masonry Contractors, Inc. to provide additional manpower on the Project.

On March 4, 2013, Bricklayers ceased supplying masons to the Project because ARB had not made the required contributions to the benefits funds. On March 8, 2013, EBS declared ARB in breach of contract and terminated the subcontract. ARB never supplied EBS with a release of liens from Bricklayers and Ms. Harris admitted she never obtained such a release from Bricklayers.

## II.  PROCEDURAL HISTORY

The following chronology of events is cumbersome but necessary to understand how I arrived at my decision to grant EBS' motion.

- On July 3, 2013, Bricklayers and their related benefit funds filed suit against ARB and Ms. Harris seeking to recover the delinquent contributions owed by ARB and guaranteed by Ms. Harris. On July 25, 2013, ARB and Ms. Harris filed a joint answer to Bricklayers' complaint.

- On August 7, 2013, ARB and Ms. Harris filed a third party complaint against EBS alleging breach of contract and a violation of 42 U.S.C. § 1981. This complaint alleged that EBS breached the subcontract by failing to pay moneys owed to ARB and that the breach was motivated by racial discrimination in violation of section 1981.

- On September 5, 2013, EBS filed an answer and asserted a counterclaim against ARB and Ms. Harris. This counterclaim alleged that ARB breached the subcontract by failing to supply adequate manpower and materials, falsely certifying that it made complete payment for all materials and labor it used on the Project, failing to timely complete its work on the Project and submitting non-compliant payment applications.

- The discovery phase of this case was protracted. The parties, at times, evidenced a disregard for court ordered deadlines and submitted numerous extension requests. As it is not directly relevant to the motion before me, I have not set forth that history here. However, the vast majority of the discovery issues originated with counsel representing ARB and Ms. Harris.

- On March 9, 2015, a final Scheduling Order was entered which set July 24, 2015 as the deadline for the parties to submit motions for summary judgment. That Order explicitly stated that no further extensions would be granted and that failure to comply with the deadlines could result in sanctions.

- On April 14, 2015, Ms. Harris submitted a request to voluntarily dismiss with prejudice the breach of contract and section 1981 claims she brought against EBS. On April 15, 2015, I entered an order granting Ms. Harris' request.

- On June 25, 2015, the parties submitted a joint request to extend the summary judgment deadline by thirty days because they had commenced, but not completed outstanding depositions. On June 26, 2015, I denied that request noting that my March 9, 2015 Order explicitly stated that no further objections would be granted.[2]

- On July 16, 2015, ARB submitted a notice seeking to voluntarily dismiss with prejudice the section 1981 claim it brought against EBS. On July 20, 2015, I entered an Order granting ARB's request.

- On July 23, 2015, EBS filed a motion for summary judgment requesting that (1) ARB's breach of contract claim be dismissed and (2) judgment be entered in its favor on the breach of contract claim it brought against ARB.

- On July 23, 2015, EBS filed the instant motion seeking to recover the fees and costs it incurred in defending against the section 1981 claim. EBS seeks attorney's fees only from ARB.[3]

- On July 24, 2015, EBS filed a motion for sanctions in connection with the breach of contract claim filed by ARB.

---

[2] I also noted that the parties indicated that, as of June 25, 2015, they had not completed depositions that they were ordered to complete by April 3, 2015.

[3] EBS is not seeking to recover fees from Ms. Harris. EBS explains that Ms. Harris withdrew her section 1981 claim within the twenty-one day "safe-harbor" period provided under Federal Rule of Civil Procedure 11. (EBS' Mot. p. 2 n.1.)

- On July 28, 2015, Bricklayers, ARB and Ms. Harris entered a consent judgment which resolved Bricklayers' claims regarding the delinquent benefit fund contributions from ARB.

- On July 30, 2015, counsel for ARB and Ms. Harris filed a request for an extension of time to respond to EBS' motions for summary judgment, sanctions and attorney's fees. In the request, counsel stated that he had difficulty downloading the motions. In light of the fact that throughout this case, counsel representing ARB and Ms. Harris had demonstrated a remarkable disregard for court orders and deadlines, I denied the request.

- On August 5, 2015, ARB filed a response in opposition to the motion for summary judgment, but failed to file a response to the motions for attorney's fees and sanctions. The response to the motion for attorney's fees was due August 10, 2015. The response to the motion for sanctions was due August 11, 2015. See Local Rule 7.1(c); Fed. R. Civ. P. 6(a)(1)(A), (d). Even though counsel's request for an extension was denied, he had over a week following that denial to file responses to the motions for sanctions and attorney's fees. He, however, elected not to do so.

- On March 23, 2016, I granted EBS' motion for summary judgment as to liability on the breach of contract claims and set a hearing for the parties to develop a record with regards to damages. On June 9, 2016, a damages hearing was held.

- Thereafter, I issued an Order directing the parties to submit letter briefs setting forth the proper measure of damages in light of the evidence introduced at the hearing.[4] In that Order, I also directed ARB to respond to EBS' motion for fees pursuant to 42 U.S.C. § 1988. ARB has submitted a brief response and the motion is now ripe for decision.

## III. DISCUSSION

### A. Jurisdiction To Entertain EBS' Motion

In its barely two page response, ARB makes a single argument in opposition to EBS' motion for attorney's fees. ARB argues that this "Court does not retain federal jurisdiction over federal claims for attorney's fees under § 1988 which were dismissed voluntarily by plaintiff prior to the filing of the motion for summary judgment pursuant to Rule 41(a)(1)(A)(i)." (ARB Resp. p. 2.)

---

[4] The proper measure of damages is the subject of a forthcoming order.

As an initial matter, ARB is incorrect in asserting that its voluntary dismissal was pursuant to Rule 41(a)(1)(A)(i). In relevant part, Rule 41(a)(1) provides that:

> (A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
>
> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
>
> (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1).

ARB seems to argue that its dismissal falls within Rule 41(a)(1)(A)(i) because it was "filed before a motion for summary judgment was filed." (ARB Resp. p. 3.) While ARB's dismissal was indeed filed before EBS filed its motion for summary judgment, the dismissal was filed well after EBS filed its answer. [5] As such, ARB's voluntary dismissal falls within Rule 41(a)(2) which provides:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection

---

[5] ARB asserts that under Rule 41(a)(1)(i) a plaintiff can voluntarily dismiss after an answer has been served but prior to service of a motion for summary judgment. Such a reading is inconsistent with the rationale of the Rule.

The original Rule 41(a)(1)(i) initially only provided that a plaintiff could voluntarily dismiss prior to service of an answer. The rule was amended in 1946 to give "the service of a motion for summary judgment by the adverse party the same effect in preventing unlimited dismissal as was originally given only to the service of an answer." Fed. R. Civ. P. 41, Advisory Committee Note 1946.

The commentary to the rule explains that "[a] motion for summary judgment may be forthcoming prior to answer, and if well taken will eliminate the necessity for an answer. Since such a motion may require even more research and preparation than the answer itself, there is good reason why the service of the motion, like that of the answer, should prevent a voluntary dismissal by the adversary without court approval." Id.

> only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2) (emphasis added).

Pursuant to Rule 41(a)(2), ARB's voluntary dismissal required court approval because it was filed after EBS filed its answer. The proposed order submitted by ARB, which I signed after consideration of the case's procedural posture and the litigants' respective interests, provided that the dismissal was with prejudice.

ARB's jurisdictional argument fairs no better. "It is well established that a federal court may consider collateral issues after an action is no longer pending." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990). As such, a voluntary dismissal does not deprive a district court of jurisdiction to resolve collateral issues such as motions for sanctions, attorney's fees or costs. Id. ("district courts may enforce Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1)"); Macheska v. Thomson Learning, 347 F. Supp. 2d 169, 179 (M.D. Pa. 2004) ("Several courts have held that a voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1) does not remove jurisdiction from the district court with respect to a motion for fees and costs pursuant to 28 U.S.C. § 1927"); see also, White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 451 (1982) ("Request for attorney's fees under § 1988 raises legal issues collateral to the main cause of action").

Having determined that I have jurisdiction to entertain EBS' request for attorney's fees, I will now consider the substance of EBS' motion.

### B. Merits of EBS' Motion for Attorney's Fees Pursuant to Section 1988

Absent a statute to the contrary, litigants bear their own attorney's fees. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975). The statutory authority for

awarding attorney's fees in a section 1981 case is set forth in 42 U.S.C. § 1988(b) which provides: "[i]n any action or proceeding to enforce a provision of sections 1981 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

For section 1988 purposes, a prevailing party may be a plaintiff or defendant. However, the standard for awarding attorney's fees to defendants differs from the standard for awarding attorney's fees to prevailing plaintiffs. Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 420-21 (1978).[6]

In Christiansburg Garment, the United States Supreme held that "a district court may in its discretion award attorney's fees to a prevailing defendant . . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Id. at 421.

### i. *Prevailing Party Status*

EBS urges that it is entitled to seek attorney's fees as a prevailing party because ARB voluntarily dismissed its section 1981 claim days before the deadline for motions for summary judgment in order to avoid an unfavorable judgment on the merits.

The United States Supreme Court has made clear that, as a baseline, prevailing party status requires some "judicially sanctioned change in the legal relationship of the parties."

---

[6] In addition to section 1988, Congress has authorized the award of attorney's fees to "prevailing parties" in numerous other statutes including the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), the Voting Rights Act Amendments of 1975, 52 U.S.C. § 10310(e), Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12205. Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 602–03 (2001). The Supreme Court has "interpreted these fee-shifting provisions consistently." Id. at 603 n.4. As such, case law interpreting the term "prevailing party" in the context of these other statutes is applicable to the section 1988 matter before me. See Commonwealth v. Flaherty, 40 F.3d 57, 60-61 (3d Cir. 1994).

Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 605 (2001). In setting forth the parameters of this rule, the Court stated that judgments on the merits and court-ordered consent decrees create the sort of "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees. Id. at 604 (internal citation omitted).

The United States Court of Appeals for the Third Circuit has not addressed the issue of whether a plaintiff's voluntary dismissal can render a defendant a prevailing party. However, two other district court judges within this circuit have confronted similar questions. Although not binding, these decisions provide useful guidance.

In Fassl v. Our Lady of Perpetual Help Roman Catholic Church, 2006 WL 709799 (E.D. Pa. Mar. 13, 2006), after the filing of a motion to dismiss, the parties submitted "a stipulation form" "acknowledging [] the voluntary withdrawal of [the plaintiff's] ADA claim." Id. at *1. Thereafter, the defendant moved for attorney's fees under the fee-shifting provision of the ADA. Id. The court concluded that the defendant was not a prevailing party because the "voluntary stipulation of dismissal did not require the judicial imprimatur necessary for monetary recoupment." Id. at *4. In reaching this conclusion, the court explained that "the parties submitted a signed stipulation to the Court in which [the plaintiff] voluntarily withdrew her ADA claim." Id. at *4.

In Evans v. Chichester School District, et al., 2008 WL 4610240 (E.D. Pa. Oct. 15, 2008), during oral argument on motions to dismiss filed by the various defendants, plaintiff's counsel voluntarily withdrew all claims against one defendant, the Pennsylvania Office of Dispute Resolution ("ODR"). Id. at *1. In an opinion resolving the motions to dismiss filed by the various other defendants, the court granted ODR's motion to dismiss "without discussion" in

9

light of the fact that plaintiff's counsel had orally agreed to voluntarily withdraw all claims against ODR. Id. at *1.

Thereafter, ODR filed a motion for attorney's fees pursuant to 42 U.S.C. § 1988. Id. at *1-2. Citing the reasoning in Fassl as persuasive, the court explained that his "granting of ODR's motion to dismiss and dismissing ODR as a party to the lawsuit was not a judicial sanctioning of a material change in the legal relationship of the parties as described by Buckhannon; the order was not based on the court's judgment of the claims or the court's independent ordering of a change in the legal relationship between the parties. Rather, it was the implementation of [the plaintiff's] withdrawal of all claims against ODR." Id. at *5. As such, the court concluded that ODR was not entitled to prevailing party status.

In both Fassl and Evans, the plaintiff voluntarily withdrew the relevant claims while the defendant's motion to dismiss was pending – i.e. before an answer had been filed. In light of that timing, the voluntary dismissals in Fassl and Evans both fell within Rule 41(a)(1) and did not require court approval.[7]

As noted above, ARB voluntarily dismissed its section 1981 claim against EBS pursuant to Rule 41(a)(2). As such, unlike Fassl and Evans, the voluntary dismissal in his case required Court approval as it was filed after EBS filed its answer. When presented with a voluntary dismiss under Rule 41(a)(2), the court has the discretion to grant the request for dismissal, grant the request but impose conditions or deny the request. See Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991) ("[v]oluntary dismissal upon motion of the plaintiff after the defendant

---

[7] Although the court in Evans entered an Order "implementing" the plaintiff's voluntary dismissal, he likely did so because the request was made orally. Had the request been submitted in writing it would have been effective automatically without judicial approval. See First Nat. Bank of Toms River, N. J. v. Marine City, Inc., 411 F.2d 674, 677 (3d Cir. 1969).

has filed its answer falls within the discretion of the district court"); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994) (when dismissing pursuant to Rule 41(a)(2) a district court may, in its discretion, "attach conditions to the parties' stipulation of dismissal").

As previously noted, unlike Rule 41(a)(1), dismissals pursuant to Rule 41(a)(2) require judicial approval. Given the nature of Rule 41(a)(2), I conclude that the voluntary dismissal in this case satisfies the "judicially sanctioned" element of the Buckhannon test for prevailing party status. See Bryant v. MV Transp., Inc., 231 F.R.D. 480, 482 (E.D. Va. 2005) (concluding that "a Rule 41(a)(2) dismissal has the 'judicial imprimatur' and 'judicially sanctioned' relief lacking in a Rule 41(a)(1)(ii) dismissal").

The next question under Buckhannon is whether the "judicially sanctioned" voluntary dismissal in this case caused a change in the legal relationship between ARB and EBS. As noted above, ARB's voluntary dismissal was with prejudice. As such, the voluntary dismissal bars ARB from bringing the same claim against EBS in this court and potentially other courts as well. See, e.g., Jackson v. Dow Chem. Co., 518 F. Appx. 99, 102 (3d Cir. 2013) (Plaintiff's "voluntary dismissal with prejudice of his remaining ADA claims also operated as a final judgment on the merits for purposes of claim preclusion"). In this way, a dismissal with prejudice materially alters the legal relationship between the parties. See Carter v. Inc. Vill. of Ocean Beach, 759 F.3d 159, 165 (2d Cir. 2014) ("a voluntary dismissal of an action with prejudice works [a material alteration], because it constitutes an adjudication on the merits for purposes of res judicata . . . and any action so dismissed could not be brought again"); Claiborne v. Wisdom, 414 F.3d 715, 719 (7th Cir. 2005) (a voluntary dismissal with prejudice "effects a material alteration of [the plaintiff's] legal relationship with the other parties, because it terminates any claims she may have had against them arising out of this set of operative facts"); Highway Equip. Co., Inc. v.

FECO, Ltd., 469 F.3d 1027, 1035 (Fed. Cir. 2006) (plaintiff's voluntary dismissal with prejudice "has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties"); Samsung Elecs. Co. v. Rambus, Inc., 440 F. Supp. 2d 495, 511 (E.D. Va. 2006) ("a dismissal with prejudice under Rule 41(a)(2) places sufficient judicial imprimatur on a change in legal relationships to confer prevailing party status").

Based on the foregoing, I conclude that EBS is a prevailing party for section 1988 purposes. The next question is whether EBS should be awarded attorney's fees based on its status as a prevailing party.

> ii. *Whether ARB's Claim was Frivolous, Unreasonable or Without Foundation*

As noted above, a court may award attorney's fees to a prevailing defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment, 434 U.S. at 421. In this context, "frivolous, unreasonable, or without foundation" implies "groundless . . . rather than simply that the plaintiff has ultimately lost his case." Id. In applying these criteria, the district court must resist the temptation to engage in "post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Id. at 421–22.

In determining whether an action is frivolous, courts look to a number of factors including: "whether the plaintiff established a prima facie case, the defendant offered to settle, the trial court dismissed the case prior to trial or the case continued until a trial on the merits." L.B. Foster, 123 F.3d at 751. Additional factors include "whether the question in issue was one of first impression requiring judicial resolution, the controversy is based sufficiently upon a real

threat of injury to the plaintiff, the trial court has made a finding that the suit was frivolous under the Christiansburg guidelines, and the record supports such a finding." Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 158 (3d Cir. 2001) (citing Unity Ventures v. County of Lake, 894 F.2d 250, 253–54 (7th Cir. 1995)). These factors, "however, are merely guidelines, not strict rules; thus [d]eterminations regarding frivolity are to be made on a case-by-case basis." Barnes, 242 F.3d at 158 (quoting Sullivan v. School Bd., 773 F.2d 1182, 1189 (11th Cir. 1983)).

In cases where findings of frivolity have been sustained, "plaintiffs did not introduce any evidence to support their claims. [On the other hand, i]n cases where the plaintiffs introduced evidence sufficient to support their claims, findings of frivolity typically do not stand." E.E.O.C. v. L.B. Foster Co., 123 F.3d 746, 751 (3d Cir. 1997) (citing Sullivan v. School Bd., 773 F.2d 1182, 1189 (11th Cir. 1985) (alterations in original)).

Based on the record before me, I conclude that ARB's section 1981 claim was without any foundation. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). To "make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. at § 1981(b).

In order to establish a right to relief under section 1981, a plaintiff must establish the following elements: (1) racial identity; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in section 1981. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002).

EBS concedes that ARB can be imputed with the racial of identity of its owner, Ms. Harris, but argues that ARB has offered no admissible evidence that there was any connection

13

between that racial identity and the termination of its contract. According to EBS, the only evidence produced in discovery remotely related to ARB's section 1981 claim was (1) Ms. Harris' conclusory statement during her deposition that she sensed she was being discriminated against;[8] (2) Ms. Harris' opinion that a conspiracy existed between EBS and the School District;[9] (3) a City Controller's report alleging that EBS engaged in improper conduct in an unrelated project years ago; and (4) the fact that ARB alleges that EBS owes it money.[10] In its response, ARB does not dispute this characterization of the record.

This "evidence" hardly provides a foundation for ARB's section 1981 claim for the following reasons. First, ARB has pointed to no evidence of record to support Ms. Harris' belief that she was being discriminated against. When asked what evidence she had to support the existence of a conspiracy between EBS and the School District, Ms. Harris responded "[t]he fact that we're sitting here, having a deposition." (EBS' Mot. for Summ. J., Ex. D, Harris Dep. 482:7-483:13.)

The City Controller's report also provides no foundation. Aside from the fact that the report is hearsay, evidence that EBS may have acted wrongfully in the past is generally not admissible to prove that it acted in the same manner in the context of the contract at issue in this case. See Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.")

---

[8] (EBS' Mot. for Summ. J., Ex. C, Harris Dep. 205:24-206:7; 250:15-254:8.)

[9] (EBS' Mot. for Summ. J., Ex. D, Harris Dep. 482:7-483:13.)

[10] (EBS' Mot. for Summ. J., Ex. C, Harris Dep. 250:15-254:8.)

Lastly, the fact that ARB alleges that EBS owes it money does not provide any support for ARB's contention that EBS' alleged breach of contract was racially motivated.

I again note that ARB did not address, let alone attempt to defend the merits of its withdrawn section 1981 claim in the letter brief it filed in opposition to instant motion. Despite the very obvious nonexistence of any evidence to support its claim, ARB continued to let stand its section 1981 claim up until just days before summary judgment motions were due. Based on the foregoing, I conclude that EBS is a prevailing defendant entitled to an award of fees and costs under section 1988.

### C. Amount of Fees

EBS' attorneys have submitted an application for attorney's fees and costs incurred in connection with EBS' defense against ARB's section 1981 claim.

The Supreme Court has stated that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The result of this computation is called the lodestar. The lodestar is strongly presumed to yield a reasonable fee." Washington v. Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996). The district, however, "has the discretion to make certain adjustments to the lodestar." Rode, 892 F.2d at 1183.

The party seeking attorney's fees must prove that its request for fees is reasonable. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). To do so, the fee petitioner must provide evidence "supporting the hours worked and rates claimed." Id. Once the fee petitioner submits that evidence, the party opposing the fee application has the burden of challenging the

reasonableness of the requested fee. McKenna v. City of Philadelphia, 582 F.3d 447, 459 (3d Cir. 2009) (citing Rode, 892 F.2d at 1183).

"The district court cannot decrease a fee award based on factors not raised at all by the adverse party." Rode, 892 F.2d at 1183. That said, the Third Circuit has cautioned that "it should not be overlooked that the awarding of an attorney's fee is a judicial action and, regardless of the parties' indifference to it, a court need not lend its imprimatur to an inappropriate order merely because there was no objection to its entry." McKenna, 582 F.3d at 462 n.13 (3d Cir. 2009).

EBS states that its attorneys spent a total of 309.65 hours defending against ARB's section 1981 claim.[11] In their application EBS' attorneys explain that this figure does not include any time spent communicating with Bricklayers, any intra-office conference or any time spent on the litigation after the dismissal of ARB's section 1981 claim. They also state that the time spent defending ARB's section 1981 claim was inextricably linked to and not severable from the time spent defending the breach of contract claim because ARB's section 1981 claim necessarily involved its breach of contract allegations.

Given their "long-term relationship with EBS," the attorneys charged a discounted rate for services rendered in this case. Based on this relationship (1) John F. Palladino, an attorney with twenty-seven years of experience and whose standard rate is $460.00 dollars an hour, billed EBS at $275.00 an hour; (2) Colin G. Bell, an attorney with eleven years of experience whose standard rate is $315.00 dollars an hour, billed EBS at $200.00 an hour; and (3) Evan M. Labov,

---

[11] I note that three hundred hours seems somewhat high given the nature of the case. But for the unique circumstances of the case and the absence of objections from ARB, I might have been inclined to reduce the number of hours expended. Given the procedural history of the litigation and the fact that the hourly rates requested by counsel are below prevailing community standards, I find that the overall amount of attorney's fees requested to be reasonable.

an attorney with four years of experience and whose standard rate is $250.00 dollars an hour, billed EBS at $175.00 an hour. (Decl. of Bell ¶ 7.)

After careful review of the itemized timesheets, (see Declaration of Colin G. Bell, Ex. A), I conclude that the number of hours spent by each of EBS' attorneys is reasonable, the tasks listed are adequately described, and the inclusion of hours devoted to the breach of contract claim are warranted as those allegations were necessarily part of ARB's section 1981 claim. I also conclude that given the attorneys' experience and prevailing community rates, the foregoing hourly rates are eminently reasonable.

Based on the foregoing reasonable hourly rate and total number of hours devoted to defending the section 1981 claim, EBS seeks to recover attorney's fees in the amount of $69,704.50. This lodestar is presumed to be reasonable. Furthermore, I find no basis to adjust the lodestar upwards or downwards. Additionally, ARB has not objected to the hourly rates, number of hours or any other portion of EBS' application. Therefore, EBS' request for attorney's fees in the amount of $69,704.50 will be granted as it is both reasonable and unopposed.

EBS also seeks an award of $7,713.81 in costs. EBS has submitted a statement of costs it incurred through July 20, 2015 in connection with the defense of ARB's section 1981 claim. (Id. at Ex. B.) Those costs include deposition transcripts, service of subpoenas, filing fees, copying, postage and travel expenses.

The word "costs" in section 1988 refers to the taxable costs referenced in Federal Rule of Civil Procedure 54(d)(1) and enumerated in 28 U.S.C. § 1920. Abrams v. Lightolier Inc., 50 F.3d 1204, 1224 (3d Cir. 1995) (citing West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83 (1991)). The "following are generally recoverable under section 1988 when it is the custom of attorneys in the local community to bill their clients separately for them: (a) reproduction

expenses; (b) telephone expenses of the attorney; (c) travel time and expenses of the attorney; (d) postage." Abrams v, 50 F.3d at 1225. Additionally, 28 U.S.C. § 1920 provides that filing fees and transcription fees are recoverable. All of the costs identified on EBS' statement are described with sufficient detail and fall within the categories identified by section 1920 and the Third Circuit as recoverable.

Furthermore, a reduction of either the fees or costs would be inappropriate because ARB has not objected to the reasonableness of the amounts EBS seeks to recover. See McDonald v. McCarthy, 966 F.2d 112, 119 (3d Cir. 1992) (holding that "the defendants, who had an opportunity to contest the accuracy and reasonableness of the fees requested but failed to do so, have waived their right to make such objections and that the district court may not, sua sponte, reduce the award requested unless such order is based on the court's personal knowledge as to the time expended on the case.")

### D. CONCLUSION

For the aforementioned reasons, EBS' motion for attorney's fees pursuant to 42 U.S.C. § 1988 will be granted. An appropriate order follows.